```
-------------------------------------------------------- x
In re:                                            :
                                                  :     Chapter 7
Shelly and Warren Jones,                          :     Case No. 23-35477
                                                  :
                              Debtors.            :
-------------------------------------------------------- x
Shelly and Warren Jones,
                                                  :
                              Plaintiff,          :
                                                  :     Adversary Proceeding
          v.                                      :     Case No. 23-09014
                                                  :
Pennymac Loan Services, LLC,                      :
                              Defendant.
-------------------------------------------------------- x
```

### MEMORANDUM DECISION

## A P P E A R A N C E S :

*Plaintiff, Pro Se*
Shelly and Warren Jones
32 North Clover St.
Poughkeepsie, NY 12601

*Counsel for the Defendant, Pennymac Loan Services, LLC*
Blank Rome LLP
1271 Avenue of the Americas
New York, New York 10020
By: Andrea M. Roberts

## CECELIA G. MORRIS
## UNITED STATES BANKRUPTCY JUDGE

Debtors, Shelly and Warren Jones ("Debtors"), filed a voluntary petition for relief under

Chapter 7 of the Bankruptcy Code on June 8, 2023.  Vol. Pet., ECF No. 1.  Debtors initiated this

adversary proceeding on August 7, 2023 against Pennymac Loan Services, LLC ("Pennymac").

Compl., ECF No. 1.  In the Complaint, Debtors state that they are bringing the complaint against

Pennymac "for violations of the Fair Debt Collection Practices Act . . . Fair Credit Reporting Act . . . [b]reach of [c]ontract, [f]raud, and [v]iolation of [t]itle." *Id.* at 2.

Along with the Complaint, Debtors have filed a "Adversary Proceeding Cover Sheet" that contains a number of blocks that may be checked to describe the nature of the suit. Debtors have checked the boxes for fraudulent transfer under §548, dischargeability for willful and malicious injury under §523(a)(6), and dischargeability for false pretenses, false representation, and actual fraud under §523(a)(2).

In the instant motion, Pennymac seeks to have the adversary proceeding dismissed with prejudice for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) and for failure to state a claim under Fed. R. Civ. P. 12(b)(6). Mot. to Dismiss, ECF No. 6. For the reasons set forth below, the complaint is dismissed in its entirety.

## Jurisdiction

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a) and the Standing Order of Reference signed by Chief Judge Loretta A. Preska dated January 31, 2012. This is a "core proceeding" under 28 U.S.C. § 157(b)(2)(I) (determinations as to the dischargeability of particular debts).

## Background

In 2019, Pennymac commenced a foreclosure action in the Supreme Court of Dutchess County against Debtors seeking to foreclose on a mortgage encumbering real property located at 32 North Clover Street, Poughkeepsie, New York 12601 (the "Property"). Roberts Decl. ¶ 2, ECF No. 6. In September of 2022, the state Court granted summary judgment and signed an order of reference in favor of Pennymac. *Id.* ¶ 15. Debtors did not appeal this order but instead filed a motion seeking a stay of the order pending appellate review (the "Stay Motion") or, in the alternative, an extension of the deadline to prepare their case to appeal. *Id.* ¶ 18.

While the state court Stay Motion was pending, Debtors filed their first bankruptcy with this Court on January 20, 2023. *See In re Jones*, Case No. 23-35048 (CGM). In that case, Pennymac filed an objection to the confirmation of Debtors' plan and filed a motion for relief from stay. Debtors filed opposition to the objection to confirmation, arguing Pennymac is not named on the note or any assignment on any public record. Debtors filed opposition to Pennymac's motion to lift the stay, arguing that Pennymac has no claim to their property, and that the loan documents submitted by Pennymac fail to show proper chain of title. Those papers also made various allegations of fraud and harassment, namely creditor's motion for relief from stay. This Court granted Pennymac's motion for relief from stay in the first bankruptcy case on April 26, 2023. *Id.* ¶ 22. Debtors first bankruptcy case was dismissed on June 7, 2023 on the Standing Chapter 13 Trustee's motion to dismiss. *Id.* ¶ 23.

On June 8, 2023, one day after dismissal, Debtors filled another bankruptcy action with this Court which is the pending case underlying this adversary proceeding. *See In re Jones*, Case No. 23-35477. This Court granted Pennymac's motion for relief from stay in this case on August 21, 2023. *Id.* ¶ 25.

Debtors filed the instant adversary proceeding on August 7, 2023. In their complaint, Debtors state that the adversary proceeding seeks relief against Pennymac for "violations of the Fair Credit Reporting Act . . . [b]reach of [c]ontract, [f]raud, and [v]iolation of [t]itle" and that Pennymac's violations stem from their continued harassment of Debtors. *Id.* Debtors characterize Pennymac as a non-priority, unsecured Creditor and state that Pennymac has attempted to obtain property that "they never had a right to claim in the first place., [sic] and it was fraudulently assigned." *Id.* at 3.

Pennymac has brought the instant motion to dismiss for lack of subject matter jurisdiction because Debtors lack standing to bring their claims and because the *Rooker-Feldman* doctrine

bars Debtor's claims related to foreclosure where summary judgment was entered in favor of Pennymac and Debtors failed to appeal.

On October 19, 2023, Debtors filed a document titled "Default Judgment" stating that Pennymac failed to respond to the adversary complaint and that they are entitled to default judgment. Mot. for Default, ECF No. 10. The document states "ORDERED, ADJUDGED AND DECREED . . . [w]e are asking that this case be dismissed and $65,000 be restored to Shelly Jones and Warren Jones inclusive of compensation for time and expenditures on this frivolous matter." *Id.*

Debtors and Pennymac both appeared at the hearing on October 24, 2023. At the hearing, Pennymac argued its papers, stating that the Debtor lacked standing and that the claims are barred by the *Rooker-Feldman* Doctrine. Hr'g Tr. 6:16–9:3. Pennymac also argues that Debtors had failed to state a claim with their complaint.

At the hearing, Debtor's argued that Pennymac did not respond to their complaint and that they are entitled to default judgment. *Id.* 12:13–19. Debtors argued that Pennymac "have not addressed proof of claim" and argued that Pennymac is not the holder of the note. *Id.* at 15:24–16:6. Debtors also argued that they have the right to due process, to be heard, and that "the government is responsible" for payment. *Id.* at 16:8–18.

<u>**Discussion**</u>

<u>Lack of Subject Matter Jurisdiction</u>

"A motion to dismiss for lack of subject-matter jurisdiction under [Fed. R. Civ. P.] 12(b)(1) is the appropriate mechanism for challenging a plaintiff's constitutional standing to bring a particular claim." *Barnett v. Countrywide Bank, FSB*, 60 F. Supp. 3d 379, 385 (E.D.N.Y. 2014). As the parties seeking to invoke jurisdiction, it is the Plaintiff's burden to establish that subject matter jurisdiction exists. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

*Standing*

Pursuant to 11 U.S.C. § 521(a)(1), a debtor seeking the benefits of bankruptcy is under a duty to disclose in the relevant schedules all of his or her interests and property rights. *See In re Lowery*, 398 B.R. 512, 515 (Bankr. E.D.N.Y. 2008). This duty includes an obligation to disclose legal claims possessed by the Debtor. *See Tilley v. Anixter Inc.,* 332 B.R. 501, 508–09 (Bankr. D. Conn. 2005). When a bankruptcy case is filed, an estate is created which "encompasses every interest of the debtor, future, nonpossessory, contingent, speculative, and derivative." *In re Arana*, 456 B.R. 161, 169 (Bankr. E.D.N.Y. 2011). Once the estate is created, only the trustee may administer property of the estate, including bringing actions on behalf of the estate. *Id*. at 169–70 ("during the pendency of a bankruptcy case, the debtor does not have standing to initiate or pursue an action based on a prepetition claim unless the trustee abandons it back to the debtor").

When a potential legal claim is disclosed on a petition, the trustee "may seek to be substituted as plaintiff and pursue the claim," allow the debtor to pursue the action, or decline to pursue the action. *Id.* When the bankruptcy case is closed, any correctly scheduled property not otherwise administered is abandoned to the Debtor. *Id*. at 170. In order to pass through abandonment, the property must be properly scheduled. *Hutchins v. IRS*, 67 F.3d 40, 43 (3d Cir. 1995). When the right to pursue an action is not properly disclosed by the debtor, it remains property of the estate, even after the bankruptcy case is closed, "indeed, unless it is administered or abandoned by the trustee, the action remains property of the estate forever." *Id.* (cleaned up).

Here, Debtors schedules do not disclose the claims that Debtors now bring with this adversary proceeding. In Debtors' schedule A/B, under Part 4, Debtors answer "no" to the prompt which asks "[d]o you own or have any legal or equitable interest in . . . [c]laims against third parties, whether or not you have filed a lawsuit or made a demand for payment." Debtors also answer "no" to the prompt which asks "[d]o you own or have any legal or equitable interest in . . .

[o]ther contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims." If Debtors do hold the right to pursue these claims, they have not been property scheduled. As unscheduled, the claims have not been and cannot be abandoned by the Trustee. The Debtors do not have standing to pursue these claims.

<u>Failure to State a Claim</u>

"To survive a motion to dismiss [for failure to state a claim], the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). The claim is facially plausible when a plaintiff pleads facts that allow the Court to draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) ("Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement."). In deciding a motion to dismiss, the Court should assume the factual allegations are true and determine whether, when read together, they plausibly give rise to an entitlement of relief. *Id.*

*Rooker-Feldman*

The *Rooker-Feldman* doctrine bars federal courts from exercising jurisdiction over cases in which a plaintiff challenges or seeks to re-litigate state court judgments. Four requirements must be met for Rooker-Feldman to divest a court of subject matter jurisdiction: (1) the federal-court plaintiff lost in state court; (2) the plaintiff must complain of injuries caused by a state-court judgment; (3) the plaintiff invites district court review and rejection of that judgment; and (4) the state-court judgment was rendered before the district court proceedings commenced. *See Hoblock*

*v. Albany County Bd. Of Elections*, 422 F.3d 77, 85 (2d Cir. 2005).  The doctrine also bars federal

courts from exercising jurisdiction over claims that are "inextricably intertwined" with state court

decision.  A claim is "inextricably intertwined" when adjudication by the federal court would

require it to determine the state court judgment was erroneously entered or was void.  *See*

*Kropelnicki v. Siegel*, 290 F.3d 118, 129 (2d Cir. 2002).

Even in situations where the state court judgment was made in error, federal courts are not

authorized to exercise appellate review.  *See District of Columbia Court of Appeals v. Feldman*,

460 U.S. 462 (1983).  The state court judgment is effective and conclusive until it is modified or

reversed in the appropriate state appellate proceeding.  *Smith v. Wayne Weinberger, P.C.*, 994 F.

Supp. 418, 424 (E.D.N.Y. 1998).

Here, the state court entered a judgment of foreclosure against Debtors.  The causes of

action and general complaints of Debtors in this adversary proceeding are the same causes of action

and general complaints as Debtors litigated in the state court action where they attempted to avoid

foreclosure.  The state court order was entered ten months before this adversary proceeding was

filed.  If this Court were to hear this case, it would be reviewing the same issues already

adjudicated in the state court.  Debtors have simply taken the issues and arguments rejected by the

state court and brought them into the bankruptcy court to be relitigated.  Such interference from this

court is barred by the *Rooker-Feldman* doctrine.

*Causes of Action*

In the Complaint, Debtors state that they are bringing the complaint against Pennymac "for

violations of the Fair Debt Collection Practices Act . . . Fair Credit Reporting Act . . . [b]reach of

[c]ontract, [f]raud, and [v]iolation of [t]itle."  Compl. 2, ECF No. 1.  Debtors also have checked the

boxes on the adversary proceeding cover sheet for fraudulent transfer and non-dischargeability for

both willful and malicious injury as well as for false pretenses, false representation, and actual

fraud. *Id.* The factual allegations contained in the complaint are as follows:

> Plaintiff Shelly Jones and Warren Jones are the owners of property located at 32 North Cllover [sic] Street, Poughkeepsie, N.Y. 12601. . . Plaintiff is a consumer as defined under FDCPA at 15 U.S.C. 1692 a (3) and a person with standing to bring a claim under FDCPA, FCRA, and New York State statutes, by the virtue of being directly affected by the violations of the Acts, for Plaintiff, did receive statements and notices from Pennymac Loan Services, LLC regarding the foreclosure of property aka residence . . . We are unable to find any documentation considered evidence admissible in court that verified we owe this debtor or that Pennymac Loan Services has any legal standing to collect anything ( If [sic] any liability even exists). We also do not have documentation that Pennymac has any legal standing to collect this alleged debt or a portion thereof in the past. Therefore, we may have paid them in error.

*Id.* ¶ 1–3.

The Complaint continues:

> This action involves an alleged "defaulted debt" as the action involves an alleged obligation of a consumer to pay money arising out of a transaction in which the real property which is the subject of the transaction is used primarily for person, family, or household purposes . . . Plaintiff contends that the collection company defendants have violated such laws by continuing to harass Plaintiffs by attempting to collect a non-existent debt that is not in default . . . we asking the court to dismiss their claims which was an attempt to obtain property that they never had the right to claim in the first place., and it was fraudulently assigned.

*Id.* at 2–3.

The "Summary of the Case" provides:

> [o]n or about May 4, 2015, Plaintiff executed a note from Plaza Home Mortgage Inc. for a loan of 165, 487.00 [sic]. The original lender of the May 4, 2015 Jones Loan from Plaza Mortgages, Inc. A copy of the note was received at closing and given to Shelly Jones. This copy of the Shelly Jones note shows no endorsement of the note attempting to make the note payable to anyone. . . [a]attached is an exhibit from Joseph R. Esquival Jr. . . [the exhibit] proves by virtue of written evidence that Pennymac Loan Services has committed fraud upon the court and needs to be held liable for their frivolous action. . . Defendants are not debt collectors or engaged in debt collecting . . .

*Id.* at 3–4.

<u>Violations of the Fair Debt Collection Practices Act</u>

The Fair Debt Collection Practice Act (the "FDCPA") prevents debt collectors from using any false, deceptive, or misleading representation or mean in connection with the collect of any debt." 15 U.S.C. § 1962e. According to the FDCPA, a "debt collector" is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1962a(6).

Debtors have stated "we do not have documentation that Pennymac has any legal standing to collect this alleged debt or a portion thereof in the past" and that "Defendants are not debt collectors or engaged in debt collecting. . . ." Compl. 3–4. Debtors have not identified any false, deceptive, or misleading representations that Pennymac has made in connection with the debt it purports to own. Even if the Court liberally construed the Debtor's allegations to read that Pennymac does not own the debt and therefore have falsely represented that they own the debt by attempting to collect it, Debtors have alleged that Pennymac is not a debt collector. Debtors have not alleged that the FDCPA applies to Pennymac as a debt collector. Debtors have failed to state a claim on which relief can be granted in relation to the FDCPA.

<u>Violations of the Fair Credit Reporting Act</u>

The Fair Credit Reporting Act (the "FRCA") provides for permissible purposes of consumer reports and requirements relating to information contained in consumer reports. 15 U.S.C. § 1681b–c. Importantly, "to come under the ambit of the FRCA, [Pennymac] must be a 'consumer reporting agency' . . . ." *McCready v. eBay, Inc.*, 453 F.3d 882, 889 (7th Cir. 2006). A consumer reporting agency is defined under the FRCA to be:

> any person which, for monetary fees, dues, or on a cooperative
> nonprofit basis, regularly engages in whole or in part in the practice
> of assembling or evaluating consumer credit information or other
> information on consumers for the purpose of furnishing consumer
> reports to third parties, and which uses any means or facility of
> interstate commerce for the purpose of preparing or furnishing
> consumer reports.

15 U.S.C. § 1681a(f).

Debtors have not alleged that Pennymac is a consumer reporting agency under the FRCA. The Debtors have failed to state a claim on which relief can be granted in relation to the FRCA. Debtors further have not offered any averment of facts from which the Court could infer that a violation of the FRCA has taken place. Debtors have failed to state a claim on which relief can be granted in relation to the FRCA.

Breach of Contract

"A claim for relief sounding in breach of contract must allege the following: (i) the existence of an agreement, (ii) adequate performance of the contract by the plaintiff, (iii) breach of contract by the defendant, and (iv) damages." *In re InSITE Services Corp., LLC,* 287 B.R. 79, 92 (Bankr. S.D.N.Y. 2002) (citing Harsco *Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir.1996)). It is not necessary for a plaintiff claiming breach of contract to "specifically state each element individually." *R.H. Damon & Co., Inc. v. Softkey Software Products, Inc.*, 811 F.Supp. 986, 991 (S.D.N.Y.1993).

The only element of a breach of contract claim alleged by Debtors is the formation of the contract. Debtors state:

> [o]n or about May 4, 2015, Plaintiff executed a note from Plaza
> Home Mortgage Inc. for a loan of 165, 487.00 [sic]. The original
> lender of the May 4, 2015 Jones Loan from Plaza Mortgages, Inc.
> A copy of the note was received at closing and given to Shelly
> Jones.

Compl. 3. Debtors have not indicated how that contract was breached or how that breach has

resulted in their suffering damages.  The complaint fails to state a claim on which relief can be granted for breach of contract.

Fraud

The elements for common law fraud under New York law and actual fraud for purposes of §523(a)(2) of the bankruptcy code are the same: 1) a false representation of material fact was made, 2) the party who made the false representation knew it was false, and 3) the false representation resulted in injury.  *In re Ottimo*, No. 8-16-08019-reg, 2017 WL 2470861, at *3 (Bankr. E.D.N.Y. June 6, 2017).  Fed. R. Civ. P. 9(b), made applicable to this proceeding by Fed. R. Bankr. P. 7009, provides "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Rule 9(b) requires the pleading to provide an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.  *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir.2007).

Again, Debtors have stated "we do not have documentation that Pennymac has any legal standing to collect this alleged debt or a portion thereof in the past."  At best, if this Court were to liberally construe the Debtor's allegations to read that Pennymac does not own the debt and therefore have falsely represented that they own the debt by attempting to collect it, Debtors have not alleged knowledge or stated how they were injured.  Further, the heightened pleading standard of Fed. R. Civ. P. 9(b) has not been met.

The Adversary Proceeding Cover Sheet Causes of Action

Debtors have filed a "Adversary Proceeding Cover Sheet" that contains a number of blocks that may be checked to describe the nature of the suit.  Debtors have checked the boxes for fraudulent transfer under §548, dischargeability for willful and malicious injury under §523(a)(6), and dischargeability for false pretenses, false representation, and actual fraud under §523(a)(2).

Section 548 of the Bankruptcy Codes allows the Trustee to "avoid any transfer . . . of an interest of the debtor in property, or obligation . . . incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition . . . ." subject to circumstances or actions of the debtor specified in the statute.  11 U.S.C. § 548.

No reading of the complaint or possible inferences this Court could make from reading the complaint allege that a fraudulent transfer has taken place between Debtors, Defendant, or any other party.  Further, Debtors are not permitted to bring such a claim by the plain reading of the statute.

Section 523 of the Bankruptcy Code provides types of debt that are not dischargeable in bankruptcy.  Typically, Creditors bring such actions to have a debt declared non-dischargeable to ensure the debt survives the bankruptcy and the eventual discharge.  Section 523(a)(6) provides that debts "for willful and malicious injury by the debtor to another entity or to the property of another entity" are nondischargeable.  Section 523(a)(2) provides that debts "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.  These types of causes of action concern fraudulent actions of the debtor that led to the creation of a debt.  These causes of actions were not pled in the complaint to any extent, nor is it logical for Debtors to bring these types of actions against Pennymac.

Proof of Claim

At the hearing, Debtors repeatedly complained of a problem with Pennymac's proof of claim.  Hr'g Tr. 15:24–25 ("But most important, they have not addressed proof of claim."); 16:3 ([t]hey have in no way addressed proof of claim."); 16:18–23 ([b]ut beyond that, we're still saying proof of claim. All right? 31 U.S.C. 5118, payment by the U.S. Government. But we're not even with that. Proof of claim, PennyMac has not answered to proof of claim with the (indiscernible)

affidavit, they have not answered with the proof of claim (indiscernible) statute."); 17:9–11 ("[a]nd with these court closing statutes Pennymac Loan Service has not answered proof of claim at all."); 18:2–4 ("[a]nd I can prove right here, right now, in front of Your Honor, that they have no proof of claim and they have no standing."); 18:18–20 ("[w]ell, I'm – they haven't sent a proof of claim. They have no proof of claim.").  Debtors misunderstand the nature and role of a proof of claim in their chapter 7 bankruptcy case.  Section 501 provides that "[a] creditor or an indenture trustee may file a proof of claim."  11 U.S.C. § 501.  In a no-asset chapter 7 case, like the one at bar, there is no statutory or procedural requirement for creditors to file a proof of claim.  The absence of a proof of claim filed by Pennymac is not relevant to this adversary proceeding or the motion to dismiss.

<u>Due Process and Right to a Hearing</u>

As to Debtor's demands for due process and their right to be heard, this Court acknowledges those rights.  At the hearing on October 24, 2023, the Court gave Debtors the opportunity to offer testimony or evidence supporting their claims.  Despite Debtors' constitutional arguments, Debtors offered no testimony or evidence supporting their claims as required to defeat the motion to dismiss.  The Court provided a platform and Debtors failed to offer any facts or law that would permit this Court to deny the motion to dismiss and allow this adversary proceeding to continue.  In addition, Debtors did not file opposition to the motion to dismiss.

**Conclusion**

For the foregoing reasons, the motion to dismiss the adversary proceeding is granted.

Pennymac shall submit a proposed order within fourteen days of the issuance of this decision,

directly to chambers (via EOrders).

/s/ Cecelia G. Morris



**Dated: November 20, 2023**
**Poughkeepsie, New York**

_____
**Hon. Cecelia G. Morris**
**U.S. Bankruptcy Judge**